United States Court of Appeals
Fifth Circuit

**F I L E D**

May 2, 2003

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 02-11032
(Summary Calendar)

_____

ADAM J., by next friends, on behalf of Robert J, Mr.
on behalf of Robert J, Mrs.,

Plaintiff-Appellant,

versus

KELLER INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas

_____

Before DAVIS, WIENER, and EMILIO M. GARZA, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant "Adam J." appeals the district court's judgment affirming the decision of the special hearing officer in a proceeding under the Individuals With Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA"). Both the state hearing officer and district court concluded that Defendant-Appellee Keller Independent School District ("District") complied with the procedural requirements of the IDEA and that the individual education programs ("IEPs") developed for Adam were appropriate,

i.e., were reasonably calculated to enable him to receive educational benefits. For the following reasons, we affirm.

## I. Facts and Proceedings

Adam J. was born in 1984 and moved to the Keller School District in the spring of 1998, while in seventh grade. By all accounts, Adam is a very bright young man who suffers from serious behavioral problems and Asperger's Syndrome, a form of autism. He was originally diagnosed, in second grade, with attention deficit hyperactivity disorder and by fifth grade was also diagnosed with depression and generalized anxiety disorder. In the fall of 1998, after a comprehensive evaluation, the District determined that Adam was eligible for special education as a child with an emotional disturbance. The school district convened an "Admission, Review, and Dismissal" ("ARD") committee meeting, developed an Individual Education Program ("IEP"), and placed Adam in a highly-structured behavior modification class at Fossil Ridge High School. At that time, Adam's parents agreed to both the IEP and the behavior modification placement.

In October 1998, Adam's parents privately arranged for another psychological evaluation of Adam. This evaluation revealed that Adam suffers from Asperger's Syndrome and Oppositional Defiant Disorder. Adam's parents did not notify the District of this new

diagnosis until May 1999.[1] Later that month, the ARD committee reconvened and Adam's "primary" disability was reclassified as Asperger's Syndrome.

In September 1999, in response to severe behavioral problems at home, Adam's parents unilaterally removed him from Fossil Ridge and placed him in a private residential treatment facility. Adam earned no academic credits while in the private facility and returned to Fossil Ridge in January 2000, where he successfully completed the spring semester.

By August 2000, Adam's behavior had improved, and he was able to maintain employment at a local fast-food restaurant. In November 2000, the District removed Adam's "emotional disturbance" eligibility, and he was administratively "coded" for autism only. Adam's behavior dramatically declined, however, and he was involved in several "major disciplinary incidents" in the fall 2000 semester. These occurrences included throwing a chair at a staff member and throwing lighted matches at other students. The ARD committee convened following each significant incident; and after the fire incident, the committee determined that Adam's behavior was not a manifestation of his disability. The committee then placed Adam in an "alternative educational setting" for fifteen days. When Adam returned to Fossil Ridge, the District provided a

---

[1] In his appellate brief, Adam maintains that "the District was notified by Adam's parents of [the] evaluation and recommendation, [but] it did not obtain the report until May, 1999.

personal aide, and his behavior improved.

In May 2001, the ARD committee met to discuss Adam's progress and to develop an IEP for the 2001-02 school year. The committee determined that Adam should remain in special education classes, with the option of enrolling in general education electives. The proposed IEP also provided for both parent and teacher training; however, the District did not commit to assigning a full-time aide to Adam in 2001. The ARD noted Adam's academic progress and an overall decrease in behavioral problems.

Adam's parents disagreed with the proposed IEP and contended that private placement, at the District's expense, is appropriate for Adam. In April 2001, Adam's parents filed a request for a state "due process" administrative hearing in accordance with the IDEA. The state hearing officer denied all relief, and Adam appealed to the 342d Judicial District Court of Tarrant County, Texas. The District removed the case to the United States District Court for the Northern District of Texas in September 2001, and summary judgment was granted in favor of the District in August of the following year. Adam timely appealed.

## II. Analysis

### A. Standard of Review

Under the IDEA, a federal district court's review of a state

4

hearing officer's decision is "virtually <u>de</u> <u>novo</u>."[2] The district court must receive the state administrative record and must receive additional evidence at the request of either party.[3] The hearing officer's findings should be accorded "due weight," but the district court must arrive at an independent conclusion based on a preponderance of the evidence.[4]

We review <u>de</u> <u>novo</u>, as a mixed question of law and fact, a district court's decision that an IEP was or was not appropriate.[5] The district court's underlying findings of fact are reviewed for clear error.[6] The party contesting the propriety of the IEP bears the burden of establishing why the IEP and the resulting placement are inappropriate under the IDEA.[7]

**B. The Propriety of Adam's IEP**

The IDEA conditions federal funding on, <u>inter</u> <u>alia</u>, the state's providing a "free appropriate public education" ("FAPE") to disabled children.[8] Under this act, the FAPE must be tailored to

---

[2] <u>Teague Indep. Sch. Dist. v. Todd L.</u>, 999 F.2d 127, 131 (5th Cir. 1993).

[3] 20 U.S.C. § 1415(i)(2); <u>Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.</u>, 118 F.3d 245, 252 (5th Cir. 1997).

[4] <u>Teague</u>, 999 F.2d at 131.

[5] <u>Cypress-Fairbanks</u>, 118 F.3d at 252.

[6] <u>Id.</u>

[7] <u>Id.</u>

[8] <u>Id.</u> at 247.

the child's particular needs by means of an individual education program ("IEP"), which is a written statement prepared at a meeting attended by a qualified representative of the school district, a teacher, the child's parents or guardians, and, when appropriate, the child himself.[9] In Texas, the ARD committee is charged with preparing IEPs for disabled children.

The free appropriate public education proffered in an IEP "need not be the best possible one, nor one that will maximize the child's educational potential; rather, it need only be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction."[10] The IDEA "guarantees only a 'basic floor of opportunity,' consisting of 'specialized instruction and related services which are individually designed to provide educational benefit.'"[11] This educational benefit "cannot be a mere modicum or de minimis,"[12] but "must be meaningful" and "likely to produce progress."[13]

When a parent challenges the appropriateness of an IEP, the

---

[9] 20 U.S.C. § 1414(d)(1)(B).

[10] Cypress-Fairbanks, 118 F.3d at 247-48 (citing Bd. of Educ. v. Rowley, 458 U.S. 176, 188-89 (1982)).

[11] Id. at 248.

[12] Id. (quoting Oberti v. Bd. of Educ., 995 F.2d 1204, 1213 (3d Cir. 1993)).

[13] Id. (quoting Bd. of Educ. v. Diamond, 808 F.2d 987, 991 (3d Cir. 1986)).

district court's inquiry, and ours on appeal, is limited to two questions. First, we must decide whether the school district complied with the procedures prescribed in the IDEA.[14] Second, we "must determine whether the IEP developed for the disabled child is 'reasonably calculated to enable the child to receive educational benefits.'" "If these requirements are met, the State has complied with the obligations imposed by Congress and the courts can require no more."[15]

In this case, Adam alleges both procedural and substantive violations of the IDEA. Most of the seven points of error Adam raises on appeal are without merit. He asserts first that the hearing officer's decision should not be afforded "due weight" because the officer was biased in favor of the school district. In support of this allegation, Adam offers four examples of bias (1) in a "synopsis" of the case, the officer erroneously "reframed" the issues presented for his consideration; (2) the officer did not provide adequate reasons for his decision; (3) the officer incorrectly described private placement as "extraordinary relief"; and (4) the officer "mis-cited" a case "in exactly the same way it was mis-cited" in the District's brief, allegedly reflecting that he "never actually had the case before him when he wrote his

---

[14] Buser v. Corpus Christi Indep. Sch. Dist., 51 F.3d 490, 492 (5th Cir. 1995) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 206-07 (1982)).

[15] Rowley, 458 U.S. at 207.

decision, but merely adopted the statements made in the District's Final Argument."

Adam's assertion of bias is unavailing. As a threshold matter, he cites no authority, other than statutory provisions calling for a "qualified and impartial mediator," in support of his sweeping assertion that "[w]here the decision of the Hearing Officer plainly shows that he is biased, his decision deserves no deference by the Trial Court." Moreover, the district court acknowledged that its review is "virtually de novo," and Adam offers no evidence that the court deviated from this standard.

We note also that the "evidence" in support of Adam's charge of bias is unconvincing. First, even if the hearing officer mischaracterized Adam's complaints in a synopsis, the officer's conclusions of law adequately address all of Adam's claims; whatever was "reframed" or "restated" in the synopsis is likely irrelevant. Second, Adam fails to explain how the hearing officer's analysis, even if conclusional or scant, demonstrates bias. Third, the officer's reference to private placement as "extraordinary relief" does not reflect bias and there is no evidence that the officer applied a "higher burden of proof" to Adam's case. Adam's fourth point, that the hearing officer abdicated his responsibility and "merely adopted the statements made in the District's Final Argument" is specious at best, and warrants no further discussion.

Several of Adam's remaining arguments are similarly meritless. For example, he strenuously argues that the district court erred in

concluding that he "took the same courses as other students, but tailored to his special needs," asserting instead that his classes were almost exclusively in the special education program. He fails, however, to demonstrate how this factual determination is relevant to his legal claims. Stating only that "Adam did not have an individualized program that considered his unique needs," Adam appears to be arguing that these "special ed." classes were not sufficiently challenging, given the ARD committee's determination that he was academically gifted.

This argument also fails. As noted above, courts have repeatedly held that a FAPE need not be the best one possible, or the one calculated to maximize the child's educational potential; it only has to provide an educational opportunity designed to meet the student's specialized needs, with sufficient support services to allow him to benefit from the instruction.[16] We recognize that the educational benefit that an IEP is designed to achieve must be "meaningful,"[17] but Adam has failed to establish that his IEPs did not satisfy this standard.

Adam's argument that the district court erred "in stating that Adam's teachers testified as to the progress he made" is similarly without merit. First, this issue is not adequately briefed, as Adam's brief merely asserts summarily that "because of the lack of

---

[16] See Cypress-Fairbanks, 118 F.3d at 247-48; see also text accompanying note 10, supra.

[17] Id. at 249.

9

specificity by the Trial Court as to which testimony it was referring to, it is impossible to discuss that testimony here." To the limited extent that he does brief the issue, Adam again urges that his progress was hampered by the low level of instruction that he received and cites his severe behavioral problems in late 2000 and early 2001 as evidence that he actually regressed while enrolled in the school district.

Presumably, Adam's challenge to the district court's factual findings in this regard are an attempt to refute the court's legal conclusion that his IEP(s) at Keller were appropriate. We have previously considered four factors as "indicators of whether an IEP is reasonably calculated to provide a meaningful educational benefit under the IDEA."[18] These factors are: (1) The program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key "stakeholders"; and (4) positive academic and non-academic benefits are demonstrated.[19] Clearly, evidence of an academic benefit militates in favor of a finding that Adam's IEPs were appropriate.

Adam has not established that the district court erred in concluding that he made progress while in the District. Aside from

---

[18] Cypress-Fairbanks, 118 F.3d at 253.

[19] Id.

challenging a curriculum that he contends was "beneath his abilities," the only support Adam proffers for his no-progress contention is his behavioral problems. Although they are severe, these problems appear to have been improving in 2001, when Adam returned from alternative placement and began working with a personal aide. The district court's conclusion that Adam made incremental progress is not clearly erroneous.

Adam's fifth and sixth points are likewise unavailing. Adam argues that the district court erred in "implying" that "because Adam's mother 'had no idea what was going on at school,' the District is "excused" from providing a FAPE. A reading of the district court's order dispels any such "implication." Similarly, Adam's argument that the district court erred in stating that the IDEA "guarantees only a basic floor of opportunity" is without merit. The IDEA does guarantee "only a basic floor of opportunity," and although Adam correctly asserts that the IEP must be designed to provide a "meaningful" educational benefit, the district court expressly considered, and rejected, Adam's claim that he received "little or no educational benefit from his IEPs." Characterizing this argument as "speculative at best," the district court cited Adam's academic progress and anticipated graduation, ultimately concluding that his IEPs were reasonably calculated to enable him to receive educational benefits. This is not clearly erroneous.

Adam asserts further that the district court erred in concluding that he did not demonstrate that private placement at

11

the Vanguard School would be appropriate. According to Adam, the district court's decision in this regard was based on the fact that Adam would not be able to interact with non-disabled peers at Vanguard; and thus, that the private school would not provide the "least restrictive environment" for Adam. He points out that the presumption in favor of "mainstreaming" is overcome when a regular classroom cannot fit the needs of a disabled child.

This argument is unpersuasive. First, because the district court concluded that the District had provided Adam with a FAPE, any ruling on private placement was merely dicta. Second, even if the district court erroneously cited interaction with non-disabled peers as a factor weighing against private placement, Adam has not carried his burden of establishing that placement at Vanguard was appropriate. From his brief and record excerpts, it is simply impossible to assess the advantages and disadvantages of private placement; Adam has not described the facilities, curriculum, or other educational benefits Vanguard offers and has not explained how the school will better suit his academic and behavioral needs.

Adam has, however, raised one issue which demands closer scrutiny. Adam alleges that the District did not comply with the procedural requirements of the IDEA and cites a litany of alleged violations. These include (1) failure to include "measurable long-term goals and short-term objectives" in an IEP,[20] (2) failure to

---

[20] Specifically, Adam alleges that the District failed to include short-term objectives for "all subjects" in a January 25,

12

update Adam's parents through regular report cards, and (3) failure to indicate Adam's baseline "level of competency" on at least one IEP.[21] According to Adam's brief, as a result of these procedural violations, his parents were "denied full participation in what were supposed to be collaborative efforts by the ARD members."

We have previously stated that "a school's failure to meet the IDEA's procedural requirements <u>may</u> alone warrant a finding that, as a matter of law, the school has failed to provide a free appropriate public education."[22] The other circuits that have addressed this question head on have consistently held that

_____

2000 IEP; objectives were prescribed for Adam's English, Math, Science/Health, and P.E. classes.

[21] The sweeping allegations in Adam's brief of procedural violations are largely vague and unsupported by citation to record evidence. <u>See</u>, <u>e.g.</u>, "'[M]easurable long-term goals and short-term objectives' were frequently not developed . . . by the ARD Committee as required by IDEA."; "[T]he IEP 'report card' was almost never filled in to be sent to the parents to apprise them of Adam's progress." The only violation alleged with any specificity (although without citation to the record) concerns defects in the IEP of January 25, 2000. <u>See</u> FED. R. APP. P. 28(a)(9)(A)(requiring "contentions and the reasons for them, with citations to the authorities and parts of the record on which appellant relies").

[22] <u>Buser</u>, 51 F.3d at 493 (emphasis added); <u>Daniel R.R. v. State Bd. of Educ.</u>, 874 F.2d 1036, 1041 (5th Cir. 1989) ("Indeed, a violation of the [Act's] procedural guarantees may be a sufficient ground for holding that a school system has failed to provide a free appropriate public education and, thus, has violated the Act."); <u>compare</u> <u>Salley v. St. Tammany Parish Sch. Bd.</u>, 57 F.3d 458, 465 (5th Cir. 1995) (concluding that procedural violations "cannot be said to have harmed" the student and affirming district court's award of nominal damages); <u>Weil v. Bd. of Elementary & Secondary Educ.</u>, 931 F.2d 1069, 1973 (5th Cir. 1991) (affirming district court's dismissal and noting that "it is apparent that any injury" resulting from the alleged procedural violation was "<u>de minimus</u> and thus <u>damnum</u> <u>absque</u> <u>injuria</u>").

13

"procedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity,"[23] but to date we have never formally adopted or rejected this approach.[24] We do so today.

After careful consideration of the procedural violations

---

[23] <u>T.S. v. Indep. Sch. Dist. No. 54</u>, 265 F.3d 1090, 1095 (10th Cir. 2001); <u>see also</u> <u>DiBuo v. Bd. of Educ.</u>, 309 F.3d 184, 190 (4th Cir. 2002) (explaining that "under our circuit precedent, a violation of a procedural requirement of the IDEA (or one of its implementing regulations) must actually interfere with the provision of a FAPE"); <u>Knable v. Bexley City Sch. Dist.</u>, 238 F.3d 755, 765 (6th Cir. 2001) ("[A] procedural violation of the IDEA is not a <u>per</u> <u>se</u> denial of a FAPE; rather, a school district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only if such violation causes substantive harm to the child or his parents."); <u>W.G. v. Bd. of Trustees</u>, 960 F.2d 1479, 1484 (9th Cir. 1992) ("Procedural flaws do not automatically require a finding of a denial of a FAPE. However, procedural inadequacies that result in the loss of an educational opportunity, or seriously infringe the parents' opportunity to participate in the IEP formulation process, clearly result in the denial of a FAPE.")(internal citations omitted).

[24] Notably, one court has cited to <u>Jackson v. Franklin County School Board</u>,806 F.2d 623, 628-29 (5th Cir. 1986), as "possible" authority for a "per se violation" approach, under which any violation of the IDEA's procedural requirements constitutes a denial of a FAPE. <u>Doe v. Alabama State Dep't of Educ.</u>, 915 F.2d 651, 662 n.11 (11th Cir. 1990). The District incorrectly assumes that we have previously addressed the issue of so-called "<u>de minimis</u>" procedural violations of the IDEA. Citing our decision in <u>Houston Independent School District v. Bobby R.</u>, 200 F.3d 341 (5th Cir 2000), the District asserts that "[Adam] must show that the local school district 'failed to implement substantial or significant provisions of the IEP' . . . a <u>de minimis</u> procedural violation will not suffice." <u>Houston</u>, however, involved the <u>failure to implement</u> an IEP, not procedural violations in determining one, and thus did not address the question presented here. <u>Houston</u>, 200 F.3d at 347 (noting that the plaintiff "does not assert that [the school district] did not comply with the lengthy procedures prescribed by the IDEA").

14

alleged in this case, we, like the state hearing officer, conclude that even if the determination of Adam's January 25, 2000 IEP was procedurally deficient in some respects, he has not established that any procedural deficiency resulted in a loss of educational opportunity or infringed his parents' opportunity to participate in the IEP process.[25] On the contrary, as Adam himself asserts, "[t]he documentary evidence shows that Adam's mother (if not both parents) were [sic] present at every one of his ARD meetings" and his parents frequently submitted supplemental "parent statements" to express their concerns and frustrations. Given Adam's parents' active participation in the crafting of his IEPs, and the absence of any demonstrable "lost educational opportunity," we conclude that the procedural requirements of the IDEA were substantially satisfied, even if some information was omitted from Adam's IEP.[26]

We recognize that Adam's parents are frustrated by their son's academic progress and that they obviously believe that his courses at Fossil Ridge have not been sufficiently challenging, given his ability and aptitude. Although we understand and sympathize with their plight, our focus is necessarily narrow. Adam's parents simply have not demonstrated that (1) a procedural violation of the IDEA produced substantive harm, or (2) Adam's IEPs were not

---

[25] W.G., 960 F.2d at 1484.

[26] Doe v. Defendant I, 898 F.2d 1186, 1191 (6th Cir. 1990) ("Adequate parental involvement and participation in formulating an IEP," not adherence to a "laundry list of items" are the "primary concern in requiring that procedures be strictly followed.").

15

reasonably calculated to provide an educational benefit.[27] We are constrained, therefore, to agree with the district court that the District has complied with the requirements of the IDEA.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[27] See Rowley, 458 U.S. at 207 (cautioning that "courts must be careful to avoid imposing their view of preferable educational methods upon the States").