**LETICIA H., as next friend
of R. H., Plaintiff,**

v.

**YSLETA INDEPENDENT SCHOOL
DISTRICT, Defendant.**

**No. EP–04–CA–421–PRM.**

United States District Court,
W.D. Texas,
El Paso Division.

Dec. 14, 2006.

514

Mark Berry, Attorney at Law, El Paso, TX, for Plaintiff.

Jose L. Martin, Richards, Lindsay, and Martin, L.L.P., Austin, TX, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON ATTORNEY'S FEES

MARTINEZ, District Judge.

On this day, the Court considered the following: (1) Defendant Ysleta Independent School District's ("YISD" or "Defendant") "Motion for Summary Judgment on Defendant's Counterclaim" ("Counterclaim Motion"), filed on July 20, 2005; (2) Plaintiff Leticia H.'s, as next friend of R.H., ("Plaintiff") "Opposition to Defendant's Motion for Summary Judgment," filed on August 4, 2005; (3) Plaintiff's "Motion for Summary Judgment on Attorney's Fees" ("Attorney's Fees Motion"), filed on July 20, 2005; (4) Defendant's "Response to Plaintiff's Motion for Summary Judgment," filed on August 4, 2005; (5) Plaintiff's "Reply to Defendant's [Response] to Motion for Summary Judgment," filed on August 30, 2005; (6) Defendant's "Motion for Summary Judgment on Plaintiff's Claim for Fees" ("Attorney's Fees Motion"), filed on July 20, 2005; (7) Plaintiff's "Opposition to Defendant's Motion for Summary Judgment on Plaintiff's Claim for Fees," filed on August 4, 2005; and (8) Defendant's "Supplement to Motion for

Summary Judgment on Attorney's Fees," filed on October 7, 2005 in the above-captioned cause. After due consideration, the Court is of the following opinion: (1) Defendant's Counterclaim Motion should be granted; (2) Defendant's Attorney's Fees Motion should be granted; and (3) Plaintiff's Attorney's Fees Motion should be denied for the reasons set forth below.

## I. BACKGROUND

### A. IDEA Statutory Framework

 Congress enacted the Individuals with Disabilities Education Act ("IDEA") to guarantee that all disabled children have access to "a free appropriate public education ["FAPE"] ... designed to meet their unique needs." 20 U.S.C. § 1400(d).[1] The FAPE guaranteed under the IDEA "need not be the best possible one, nor one that will maximize the child's educational potential; rather it need only be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction." *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247–48 (5th Cir.1997) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188–89, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982)). In essence, "the IDEA guarantees only a basic floor of opportunity for every disabled child, consisting of specialized instruction and related services which are individually designed to provide educational benefit." *Id.* (internal quotations omitted). Despite these limitations, a child's education under the IDEA must be meaningful. *Id.* To implement this goal, the IDEA requires school districts to develop an individualized education plan ("IEP"), which adapts the FAPE of each disabled child to that child's specific needs. 20 U.S.C. § 1414(d)(1)-(2); *Adam J. v. Keller Indep. Sch. Dist.*, 328

F.3d 804, 808 (5th Cir.2003). An IEP is an individually-tailored plan, collaboratively developed by parents and educators, which must contain, among other things, a statement of the child's current educational performance and measurable educational goals. 20 U.S.C. § 1414(d)(1)(A)-(B).

The IDEA further provides a "comprehensive system of procedural safeguards" designed to promote compliance with the act. *Honig v. Doe*, 484 U.S. 305, 308, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *see* 20 U.S.C. § 1415 (providing a series of detailed procedural safeguards). If parents believe their child's IEP is insufficient, they may request an "impartial due process hearing." 20 U.S.C. § 1415(b)(6), (f)(1); *Rowley*, 458 U.S. at 183–84, 102 S.Ct. 3034. Furthermore, "[a]ny party aggrieved" by a decision rendered at an impartial due process hearing may appeal the decision to a district court. 20 U.S.C. § 1415(i)(2). In addition, a party claiming entitlement to attorney's fees under the IDEA may also file a claim in district court. 20 U.S.C. § 1415(i)(3).

### B. Factual and Procedural History

At the time Plaintiff initiated the administrative proceedings, Plaintiff's son R.H. was a sixteen year-old student who qualified for special education under the IDEA due to autism, mental retardation, and speech impairments. Def.'s Countercl. Mot., at 1; Pl.'s Orig. Compl., at ¶ 4. YISD developed an IEP for the January 2003–January 2004 calendar year that addressed, among other things, R.H.'s speech, gross motor skills, and fine motor skills. Def.'s Countercl. Mot., at 1; Pl.'s Attorney's Fees Mot. Mem., at 1. In the area of speech, R.H.'s IEP had two annual goals: (1) to "demonstrate measurable

---

1. The IDEA was recently amended by the Individuals with Disabilities Education Improvement Act of 2004, which took effect on July 1, 2005. However, all citations to the IDEA are to the pre–2004 version, which was in effect during the proceedings below.

progress toward the acquisition of developmentally appropriate communication using alternative and/or augmentative communication techniques"; and (2) to "employ developmentally appropriate communication skills needed for personal, social, and/or educational control." Decision of Hr'g Officer, at 2. In the area of gross motor skills, R.H.'s IEP indicated that his annual goal was simply "to improve gross motor skills." *Id.* In the area of fine motor skills, R.H.'s stated annual goal was to "increase his fine motor skills to allow increased participation in classroom activities." *Id.*

On August 18, 2003, Plaintiff filed a "Request for Special Education Due Process Hearing" concerning the provision of R.H.'s FAPE. Pl.'s Attorney's Fees Mot. Mem., Ex. 1, at 1. Specifically, Plaintiff complained that YISD had failed to provide R.H. measurable annual goals in the subjects of speech therapy, gross motor skills, and fine motor skills, in violation of 34 C.F.R. § 300.347. *Id.* Plaintiff requested that YISD be ordered to "conduct an ARD committee meeting and develop goals for speech therapy, gross motor skills and fine motor skills that are measurable, that is, more than a statement of 'improvement.'" *Id.,* Ex. 1, at 2. On October 1, 2003, Special Education Hearing Officer James N. Hollis ("Officer Hollis") issued a decision on the discrete issues raised by Plaintiff.[2] Decision of Hr'g Officer, at 1. Officer Hollis held that R.H.'s current annual goals in speech, fine motor skills, and gross motor skills were not measurable within the meaning of 34 C.F.R. § 300.347. *Id.* at 5, 7. Officer Hollis ordered YISD to propose measurable annual goals for R.H.'s IEP and to convene an IEP Team meeting to consider the proposals. *Id.* at 5. Officer

Hollis further concluded that R.H.'s IEP, while procedurally inadequate, was still "reasonably calculated to provide [R.H.] with a free, appropriate education." *Id.* In addition, Officer Hollis held that the procedural violation did not infringe on Leticia H.'s opportunity to participate in the IEP process or result in a loss of educational opportunity for R.H. *Id.* at 7.

On November 8, 2004, Plaintiff filed suit in this Court claiming to be a "prevailing party" entitling her to attorney's fees based on Officer Hollis's decision. On November 30, 2004, Defendant filed a counterclaim challenging Officer Hollis's decision that R.H.'s IEP was procedurally inadequate. On July 20, 2005, Defendant filed a motion for summary judgment on its counterclaim. Also on July 20, 2005, the parties filed cross-motions for summary-judgment on Plaintiff's claim for attorney's fees under the IDEA. The Court will first review the merits of Defendant's Counterclaim Motion because it contests portions of Officer Hollis's decision that potentially affect the Court's analysis of the pending Attorney's Fees Motions.

## II. DEFENDANT'S COUNTERCLAIM MOTION

### A. Standard of Review

▮▮▮ Defendant files for summary judgment on its counterclaim, challenging Officer Hollis's decision that Defendant committed procedural violations in the development of R.H.'s IEP. The summary judgment standard for claims filed pursuant to 20 U.S.C. § 1415(i)(2) is unique. *Austin Indep. Sch. Dist. v. Robert M.,* 168 F.Supp.2d 635, 638 (W.D.Tex.2001). The IDEA provides that when reviewing a dis-

---

**2.** The Hearing Officer noted:

The issues presented by Petitioner's hearing request ... are narrow. Petitioner's sole complaint is that [YISD] failed to provide annual goals for [R.H.] ... that are measurable.... Petitioner's request is that the

YISD be ordered to develop and propose measurable goals for [R.H.] in his areas of instruction, and to consider those in an ARDC meeting.

Decision of Hr'g Officer, at 1.

puted decision by a special education hearing officer, a district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B). While this assessment is "virtually de novo," it "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034.[3] A district court must confer "due weight" upon the special education officer's ruling, while ultimately rendering an independent determination based upon the preponderance of the evidence. *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir.2000) (citing *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034). The parties have not requested that the Court hear additional evidence on any matter. Therefore, the Court's review is limited to the records of the administrative proceedings.

A court conducts a two part inquiry for suits brought pursuant to § 1415(i)(2). *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034. A court first examines whether "the State has complied with the procedures set forth in the Act." *Id.* Second, a court examines whether the IEP is reasonably calculated to enable the child to receive educational benefits. *Id.* at 206–07. If the State satisfies both of these tests, the State "has complied with the obligations imposed by Congress and the courts can require no more." *Id.* at 207, 102 S.Ct. 3034.

Neither Plaintiff nor Defendant asserts a challenge to Officer Hollis's holding that YISD's procedural violation did not result in a loss of educational opportunity for R.H. Defendant only challenges Officer Hollis's decision that YISD violated the IDEA's procedural mandate to state annual goals in measurable terms. Plaintiff does not challenge any portion of Officer Hollis's decision in her Original Complaint; rather, she claims that Officer Hollis's ruling entitles her to prevailing party status. Therefore, the Court will contain its analysis to Officer Hollis's decision that YISD violated the procedural requirements of the IDEA.[4] *See Lewisville Indep. Sch. Dist. v. Charles W.*, 81 Fed.Appx. 843, 846 (5th Cir.2003)[5] (affirming the district court's finding that the parties did not challenge the procedural compliance prong and evaluating only the substantive prong).

### B. Procedural Compliance

■ Under the IDEA, an IEP must contain "a statement of measurable annual

---

**3.** The Fifth Circuit has further noted that,

Congress left the choice of educational policies and methods where it properly belongs—in the hands of state and local school officials. Our task is not to second guess state and local policy decisions; rather, it is the narrow one of determining whether state and local school officials have complied with the Act.

*Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5th Cir.1996).

**4.** This limitation is more theoretical than actual because the Court must consider whether the procedural violation resulted in substantive harm under the procedural compliance prong. *See Adam J.*, 328 F.3d at 811–12 (examining whether alleged procedural viola-

tions denied parents the right to participate in the IEP development or resulted in a loss of educational opportunity); *Knable v. Bexley City Sch. Dist.*, 238 F.3d 755, 764 (6th Cir. 2001) (noting, under the "Procedural Violations" portion of the decision, that "even if we conclude that [the school] did not comply with the Act's procedural requirements, such a finding does not mean that the [plaintiffs] are entitled to relief. Rather, we must inquire as to whether the procedural violations have caused substantive harm. . . .").

**5.** Though *Lewisville* is an unpublished opinion, the Court finds that its reasoning and logic persuasively apply to the instant case. 5TH CIR R. 47.5.4 (stating "[a]n unpublished opinion may . . . be persuasive").

goals, including benchmarks or short-term objectives, related to—(I) meeting the child's needs that result from the child's disability to enable the child to be involved in and progress in the general curriculum; and (II) meeting each of the child's other educational needs that result from the child's disability." 20 U.S.C. § 1414(d)(1)(A)(ii); 34 C.F.R. § 300.347(a)(2). At the administrative hearing, Plaintiff complained that R.H.'s annual goals in speech therapy, gross motor skills, and fine motor skills did not procedurally comply with the IDEA's directive that annual goals be measurable. Officer Hollis agreed that R.H.'s annual goals were not measurable; he also concluded that the procedural violations did not result in the denial of a FAPE. Nonetheless, he ordered YISD to propose new annual goals. Defendant challenges Officer Hollis's decision, contending that R.H.'s annual goals were measurable. In the alternative, Defendant claims that a procedural flaw that does not infringe on a parent's right to participate in the IEP process or result in a loss of educational opportunity for a child does not render an IEP insufficient, thus precluding relief.

■■ Defendant is correct that a procedural violation standing alone will not entitle a plaintiff to relief. Accordingly, most courts require a showing of substantive harm precipitating from a procedural violation before granting relief. *See Adam J.,* 328 F.3d at 811–12 (adopting the rule that "procedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity"); *DiBuo v. Bd. of Educ.,* 309 F.3d 184, 190 (4th Cir.2002) (holding that "a violation of a procedural requirement of the IDEA ... must actually interfere with the provision of a FAPE before the child and/or his parents would be entitled" to relief); *Erickson v. Albuquerque Pub. Schs.,* 199 F.3d 1116, 1123 (10th Cir.1999) (noting that "a school dis-

trict's failure to comply with statutory IEP content requirements did not amount to a substantive deprivation, so there was no violation of the student's right to a FAPE"); *Doe v. Defendant I,* 898 F.2d 1186, 1190–91 (6th Cir.1990) (refusing to "exalt form over substance" by holding that technical deviations from procedural requirements will not invalidate an IEP). Furthermore, in *Adam J.,* the Fifth Circuit cited with approval the proposition stated in *Doe* that " '[a]dequate parental involvement and participation in formulating an IEP,' not adherence to a 'laundry list of items' are the 'primary concern in requiring that procedures be strictly followed.' " *Adam J.,* 328 F.3d at 804 n. 26 (citing *Doe,* 898 F.2d at 1190–91). Therefore, procedural irregularities which do not infringe on parental involvement or result in the loss of educational opportunity will not invalidate an IEP or entitle a plaintiff to relief. *Id.* at 811–13.

While one may believe that R.H.'s annual goals could have been written with greater clarity, a thorough review of the administrative record indicates that Leticia H. was able to participate in the IEP process and R.H. received educational benefit, despite the procedural irregularities in his IEP. The record demonstrates that Leticia H., R.H.'s teachers, and R.H.'s therapists all worked collaboratively to develop and implement R.H.'s IEP. *See, e.g.,* Test. of Bertha Sanchez, Tr. at 44–45 (discussing that the ARD committee and Leticia H. collaboratively developed, discussed, and agreed on R.H.'s goals and objectives). The record also reveals that Leticia H. personally and actively participated in the development of R.H.'s IEP. *See* Test. of Leticia H., Tr. at 163 (indicating that Plaintiff always provided her input at the ARD Committee meetings reviewing and developing R.H.'s IEP). In fact, YISD incorporated specific short-term objectives at her request. *See* Test. of Bertha San-

chez; Tr. at 44–45 (testifying that YISD incorporated Plaintiff's suggested objectives to R.H.'s IEP).

Plaintiff argues that R.H. has demonstrated a lack of progress under his 2001–2003 IEPs. Pl.'s Opp'n to Def.'s Countercl. Mot., at 1–2. The record indicates that the gravity of R.H.'s disability complicates a traditional evaluation of his progress. However, R.H.'s mastery of short-term objectives, while slow or sporadic, demonstrates that he received positive educational benefit from his IEP.[6] *See Adam J.,* 328 F.3d at 810 (noting that "evidence of an academic benefit militates in favor of a finding that [a student's] IEPs were appropriate"). In general, R.H.'s annual short-term objectives show an increase in difficulty and complexity demonstrating progress by R.H. *See* Test. of Yvette Rojas, Tr. at 74–75 (noting that R.H. mastered most of his 2002 short-term objectives for speech including using "preverbal communication indicators, eye gaze, facial expression; gesturing, response to name, response to 'no' " and indicating "need for help" or "like/dislike"); Test. of Margarita Lopez, Tr. at 113 (testifying that R.H. graduated to the short-term objective of buttoning after mastering the skill of zipping); Test. of Margarita Lopez, Tr. at 114 (noting R.H.'s progress from the objective of tolerating assistance while brushing teeth to actually brushing teeth with help). Therefore, the Court agrees with Officer Hollis's finding that the specificity and progression of R.H.'s short-term objectives prevented any loss of educational opportunity.

Given the Court's conclusions that Leticia H. actively participated in the development of the challenged IEP and that R.H. was not substantively harmed by any procedural defects, the Court finds that YISD substantially complied with the procedural requirements of the IEP. *See Adam J.,* 328 F.3d at 804 (concluding that "procedural requirements of the IDEA were substantially satisfied" due to "the parents' active participation in the crafting of [the] IEPs, and the absence of any demonstrable lost educational opportunity"). Once a court concludes that a student's IEP is reasonably calculated to provide him with a FAPE, the court must leave "questions of methodology" to the state. *Rowley,* 458 U.S. at 208, 102 S.Ct. 3034. While the Court sympathizes with Plaintiff's desire for more dramatic *results,* the record does not support a finding that R.H. was denied the "basic floor of *opportunity* " guaranteed by the IDEA. *See Cypress–Fairbanks,* 118 F.3d at 248 (emphasis added) (discussing the minimum requirements for an adequate FAPE). Therefore, Plaintiff is not entitled to any relief. Thus, the Court reverses Officer Hollis's decision to the extent that it orders Defendant to amend the IEP.[7]

## III. ATTORNEY'S FEES MOTIONS

Plaintiff claims prevailing party status entitling her to attorney's fees pursuant to 20 U.S.C. § 1415(i)(3). The parties have filed cross motions for summary judgment on this issue. The traditional summary judgment standard applies to a court's determination of prevailing party status.[8] No issues of fact exist; therefore,

---

6. R.H.'s speech/language pathologist, occupational therapist, and physical therapist all testified that R.H. was demonstrating slow but inconsistent progress under his IEP. However, they all concurred that this type of progress was consistent with his disabilities.

7. The Court finds no authority for an administrative judge to remedy an IEP that he has

concluded is sufficient other than procedural defects that do not rise to the level of substantive harm.

8. *Cf. supra* Part II.A (providing the modified standard of review under the IDEA for an aggrieved party challenging the findings and decision of an administrative hearing officer).

the Court will determine Plaintiff's prevailing party status as a matter of law. *See* FED.R.CIV.P. 56(c) (mandating summary judgment if the evidence demonstrates the "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.")

 The IDEA grants a court discretion to award reasonable attorney's fees to "the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). Courts interpret prevailing party status under the IDEA consistently with federal fee-shifting statutes, such as 42 U.S.C. § 1988. *Salley v. St. Tammany Parish Sch. Bd.*, 57 F.3d 458, 468 n. 13 (5th Cir.1995). Accordingly, courts apply a "significant issue" or "merits based" test, which recognizes prevailing party status when a party succeeds "on any significant issue in litigation which achieves some of the benefit the part[y] sought in bringing the suit." *Tex. State Teachers Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789, 791–92, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (internal quotations omitted); *Angela L. v. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188, 1193 (5th Cir.1990). However, a technically victorious party will not qualify as a prevailing party "where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis . . . .*" *Garland,* 489 U.S. at 792, 109 S.Ct. 1486. Ultimately, there are two requirements to be eligible for prevailing party status under the IDEA: "(1) the remedy received under the [IDEA] must alter the legal relationship between the parties, and (2) the nature of the remedy must foster the purposes of the [IDEA]." [9] *Angela L.*, 918 F.2d at 1196 (5th Cir.1990).

Both prongs of the prevailing party test require that the movant demonstrate the receipt of a remedy. As a result of the Court's decision on Defendant's Counterclaim Motion, Plaintiff does not receive any remedy.[10] Therefore, Plaintiff is not a prevailing party under the IDEA. Accordingly, the Court is of the opinion that Plaintiff's Attorney's Fees Motion should be denied and Defendant's Attorney's Fees Motion should be granted.

9. The IDEA was formerly the Education of the Handicapped Act (EHA), which was amended by the Handicapped Children's Protection Act (HCPA) to provide for attorney's fees. *Verginia McC v. Corrigan–Camden Indep. Sch. Dist.*, 909 F.Supp. 1023, 1028 (E.D.Tex.1995).

10. The Court notes that, even under Officer Hollis's ruling, Plaintiff would not have qualified as a prevailing party. Under the first prong of the *Angela L.* test, Officer Hollis's decision that R.H.'s annual goals were not measurable and order requiring YISD to formulate appropriate annual goals arguably altered the relationship between Plaintiff and Defendant. However, Plaintiff would not be able to satisfy the second prong—demonstrating that the remedy fosters the purposes of the IDEA. The fundamental purpose of the IDEA is to assure a "free, appropriate public education" to all disabled children. *Angela L.*, 918 F.2d at 1195. "To determine whether particular forms of relief foster the purposes of the [IDEA], the critical question is whether a handicapped child receives any appropriate special services necessary to education that the child had not received prior to the request for a due process hearing." *Id.* Officer Hollis's decision did not result in the provision of any special services *necessary to education* that R.H. was not receiving prior to the hearing. On the contrary, Officer Hollis concluded that R.H.'s IEP was already "reasonably calculated to provide [R.H.] with a free, appropriate public education." Decision of Hr'g Officer, at 5. Accordingly, Officer Hollis's decision merely confirmed that the fundamental purpose of the IDEA was being provided. Considering Officer Hollis's determination that R.H. was not denied a FAPE, granting Plaintiff prevailing party status would not have fostered the underlying purposes of the IDEA, to guarantee the provision of a FAPE.

## IV. CONCLUSION

In summary, the Court holds that any procedural defect in R.H.'s IEP did not result in substantive harm. Therefore, YISD satisfied the procedural requirements of the IDEA. In light of this holding, Plaintiff is not entitled to attorney's fees as a prevailing party.

Accordingly, **IT IS ORDERED** that Defendant Ysleta Independent School District's Motion for Summary Judgment on Defendant's Counterclaim is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Ysleta Independent School District's Motion for Summary Judgment on Plaintiff's Claim for Fees is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff Leticia H.'s, as next friend of R.H., Motion for Summary Judgment on Attorney's Fees is **DENIED.**

**IT IF FURTHER ORDERED** that the above-captioned cause is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that any and all remaining pending motions are hereby **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk shall close this matter.