

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-08-401-CV

JERRY HOLLINGSWORTH AND                                    APPELLANTS
KENNETH ANDERSON

V.

KIM HACKLER, INDIVIDUALLY                                    APPELLEES
AND AS NEXT FRIEND FOR
C.H., A MINOR, AND STEVE
HACKLER, INDIVIDUALLY
ANDAS NEXT FRIEND FOR C.H.,
A MINOR

------------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION

------------

Appellants Jerry Hollingsworth and Kenneth Anderson appeal the trial court's denial of their motion for summary judgment based on qualified immunity. We reverse and render.

I.    Background

In October 2003, C.H., the child of Kim and Steve Hackler, was a student at Dawson Middle School (Dawson) in the Carroll Independent School District. Appellant Jerry Hollingsworth was the principal and appellant Kenneth Anderson was the assistant principal of Dawson. On October 21, 2003, C.H. made an obscene gesture toward some of his classmates in response to their making fun of him. Later that day, certain classmates of C.H. accused him of making physical threats toward one or more students. At the time, C.H. was disabled for purposes of the Individuals with Disabilities Education Act (IDEA)[1] by virtue of being diagnosed with attention deficit disorder (ADD) in 2002.

On October 27, 2003, an admission, review, and dismissal (ARD) "manifestation determination" committee meeting was held.[2] The ARD

---

[1] 20 U.S.C.A. §§ 1400–1487 (West 2004). The IDEA was amended by the Individuals with Disabilities Education Improvement Act of 2004, which took effect on July 1, 2005. Pub. L. No. 108–446, Title I, § 101, 118 Stat. 2647 (2004); see id. Title III, § 302, 118 Stat. 2647, 2803 (establishing general effective date of July 1, 2005). All citations to the IDEA and Code of Federal Regulations are to versions in effect during the period of time relevant to this appeal.

[2] See 34 C.F.R. § 300.523. By statute, the ARD committee is comprised of members of the child's "IEP Team" (individual education program team) and "other qualified personnel." 20 U.S.C.A. § 1415(k)(4)(B); see also 34 C.F.R. § 300.523(b) (stating the same requirement in IDEA implementing regulation). The child's IEP Team includes the child's parents, at least one regular and one special education teacher of the child, and other school officials. See 20 U.S.C.A. § 1414(d)(1)(B).

2

committee included the Hacklers, Hollingsworth, Anderson, other educators from the school district, a counselor, and a psychologist. The purpose of the ARD committee meeting was to determine if C.H.'s behavior in making an obscene gesture on October 21 and allegedly threatening students was a "manifestation" of his ADD, as that term is defined by the IDEA and implementing regulations.[3] The ARD committee determined that C.H.'s behavior was not a manifestation of his ADD, and the Hacklers admit they initially agreed with this determination.

Later that day, however, Anderson informed the Hacklers that, based on the ARD committee's determination, C.H. would be disciplined by placement in the school district's Disciplinary Alternative Education Program (DAEP) for forty-five days. The Hacklers informed Anderson that they had changed their minds and disagreed with the ARD committee's determination. By the end of the day, they filed a request for a special education due process hearing with the Texas Education Agency to review the DAEP decision. The Hacklers' request allowed C.H. to remain at Dawson pending the outcome of the hearing. Ultimately, the Hacklers and the school district resolved their dispute through mediation, and C.H. was allowed to transfer schools without spending time in the DAEP.

---

[3]... *See id.* § 1415(k)(4); 34 C.F.R. § 300.523.

Appellees sued Hollingsworth and Anderson for libel, slander, malicious prosecution, gross neglect, gross negligence, malice, and a claim under the Civil Rights Act of 1871, 42 U.S.C.A. § 1983. Appellees' § 1983 claim was based on the allegation that Hollingsworth and Anderson violated C.H.'s rights under the IDEA by placing C.H. in the DAEP for forty-five days instead of referring the disciplinary decision to the ARD committee.

Hollingsworth and Anderson filed traditional and no-evidence summary judgment motions based, in part, on the qualified immunity of public officials sued in their individual capacities under § 1983. The trial court denied their motions as to qualified immunity on the § 1983 claim, but granted summary judgment on all remaining claims against them. On September 24, 2008, the trial court denied a motion to reconsider, and this appeal followed.

## II. Qualified Immunity

Appellants' sole issue on appeal is whether the trial court erred in denying their traditional and no-evidence motions for summary judgment based on the qualified immunity of public school officials sued in their individual capacities under § 1983 for violations of the IDEA.

## A. Standard of Review

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for no-evidence summary

4

judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense.[4] The motion must specifically state the elements for which there is no evidence.[5] The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact.[6]

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.[7] We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions.[8] We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not.[9] If the nonmovant brings forward more than a scintilla of probative evidence that

[4] ... Tex. R. Civ. P. 166a(i).

[5] ... *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

[6] ... *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

[7] ... *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).

[8] ... *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).

[9] ... *Timpte Indus., Inc.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).

raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.[10]

We review a traditional summary judgment de novo.[11] We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not.[12] We indulge every reasonable inference and resolve any doubts in the nonmovant's favor.[13] A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[14] To accomplish this, the defendant-movant generally must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law.[15]

---

[10] ... *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

[11] ... *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

[12] ... *Id.*

[13] ... *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[14] ... *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c).

[15] ... *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

B.    Qualified Immunity from Appellants' § 1983 Claims

Section 1983 creates a private right of action for violations of an individual's federally guaranteed rights by those acting under color of state law.[16] The doctrine of qualified immunity shields an official performing discretionary functions from individual liability for civil damages under § 1983 if the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[17]

After a government official asserts the affirmative defense of qualified immunity, the summary judgment burden shifts to the plaintiff to show that the defendant's conduct violated a clearly established statutory or constitutional right.[18] A right is "clearly established" when its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that

---

[16] *See Richardson v. McKnight*, 521 U.S. 399, 403, 117 S. Ct. 2100, 2103 (1997).

[17] *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982); *Leachman v. Dretke*, 261 S.W.3d 297, 312 (Tex. App.—Fort Worth 2008, no pet.) (op. on reh'g).

[18] *Newman v. Kock*, 274 S.W.3d 697, 705 (Tex. App.—San Antonio 2008, no pet.) (following Fifth Circuit burden-shifting framework for qualified immunity claims); *Leachman*, 261 S.W.3d at 312 (same); *see Pearson v. Callahan*, 129 S. Ct. 808, 815–16 (2009) (describing test for qualified immunity).

right."[19]  Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter for the jury.[20]  If the plaintiff fails to show that the official's conduct violated a clearly established statutory or constitutional right, the official is entitled to have the claims dismissed.[21]

In this case, appellants contend that they are entitled to qualified immunity because appellees failed to meet their burden of showing that appellants violated C.H.'s rights under the IDEA by failing to have the ARD committee decide whether to place C.H. in the DAEP for forty-five days.[22]

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs."[23]  When a school seeks to discipline a child with a disability, the IDEA requires that the child's "individualized education program

---

[19] ... *Newman*, 274 S.W.3d at 705 (citing *Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000)).

[20] ... *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

[21] ... *Pearson*, 129 S. Ct. at 815–16; *Harlow*, 457 U.S. 800, 818–19, 102 S. Ct. 2727, 2738–39; *Leachman*, 261 S.W.3d at 312–13 (citing *Baker v. McCollan*, 443 U.S. 137, 140, 99 S. Ct. 2689, 2692 (1979) ("The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'")).

[22] ... *See Leachman*, 261 S.W.3d at 312–13.

[23] ... 20 U.S.C.A. § 1400(d); *see Leticia H. v. Ysleta Indep. Sch. Dist.*, 502 F. Supp. 2d 512, 515 (W.D. Tex. 2006) (quoting same).

team" (IEP Team),[24] including the child's parents and educators, conduct a "manifestation determination review."[25] An IEP Team is also referred to as an "admission, review, and dismissal" (ARD) committee.[26] The purpose of the ARD committee's manifestation determination review is to determine whether the child's behavior was a manifestation of the child's disability.[27]

If the ARD committee determines that the child's behavior was not a manifestation of the child's disability, then the IDEA provides that "the relevant disciplinary procedures applicable to children without disabilities may be applied to the child in the same manner in which they would be applied to children without disabilities," so long as the child is given a free appropriate public

---

[24] 20 U.S.C.A. § 1414(d)(1)(B).

[25] *See id.* § 1415(k)(4); 34 C.F.R. § 300.523 (a), (b). "[I]f a disciplinary action involving a change of placement for more than 10 days is contemplated for a child with a disability who has engaged in other behavior that violated any rule or code of conduct . . . that applies to all children[,] . . . in no case later than 10 school days after the date on which the decision to take that action is made, a review shall be conducted of the relationship between the child's disability and the behavior subject to the disciplinary action." 20 U.S.C.A. § 1415(k)(4). By statute, this committee includes the child's parents and other members of the child's IEP Team. *Id.* § 1414(d)(1)(B) (defining IEP Team to include a child's parents), § 1415(k)(4)(B) (requiring manifestation determination review to be conducted by IEP Team and "other qualified personnel").

[26] *See, e.g., Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 807 (5th Cir. 2003).

[27] *See* 20 U.S.C.A. § 1415(k)(5)(A); 34 C.F.R. § 300.523.

education.[28]   The IDEA specifically states that, under these circumstances, "[s]chool personnel . . . may order a change in the placement of a child with a disability . . . to an appropriate interim alternative educational setting for the same amount of time that a child without a disability would be subject to discipline."[29]   The IDEA also provides parents procedural safeguards, including the right to participate as a member of the ARD committee conducting the manifestation determination review and the right to appeal to a hearing officer if they disagree with the manifestation determination or "any decision regarding placement."[30]   Importantly, however, the IDEA grants no authority to the ARD committee to decide what, if any, disciplinary procedures are applicable to the child upon determining that the child's behavior is not a manifestation of the child's disability.[31]

---

[28] 20 U.S.C.A. § 1415(k)(5)(A); *see id.* § 1412(a)(1) (requiring that "[a] free appropriate public education is available to all children with disabilities . . . including children . . . who have been suspended or expelled from school").

[29] *Id.* § 1415(k)(1)(A)(ii).

[30] *Id.* § 1415(k)(6)(A)(i) (establishing parental right to appeal manifestation determination or any decision regarding placement); *see id.* § 1415(k)(4)(B) (requiring that child's IEP Team be included on ARD committee), § 1414(d)(1)(B)(i) (requiring parents to be members of their child's IEP Team).

[31] *See id.* § 1415(k)(4) (limiting ARD committee role regarding manifestation determination review), § 1415(k)(1) (defining authority of school personnel to take disciplinary action, including ordering the change in placement of a child with a disability).

Pursuant to the IDEA, the Hacklers were members of the ARD committee that conducted the "manifestation determination review" of C.H.'s behavior.[32] They do not dispute that the ARD committee determined that C.H.'s behavior was not a manifestation of his disability. The Hacklers contend, however, that they should have been afforded the opportunity to participate in the decision regarding their child's discipline after it was determined that his behavior was not a manifestation of his disability and that Hollingsworth and Anderson violated IDEA regulations that allow parents to participate in decisions regarding their child's "educational placement" by unilaterally deciding to place C.H. in the DAEP for forty-five days.[33]

The Hacklers rely on 34 C.F.R. § 300.501(c), which states as follows:

(c) Parent involvement in placement decisions.

> (1) Each public agency shall ensure that the parents of each child with a disability are members of *any group that makes decisions on the educational placement of their child.*

> (2) In implementing the requirements of paragraph (c)(1) of this section, the public agency shall use procedures consistent with the procedures described in § 300.345(a) through (b)(1).[34]

---

[32] *See id.* § 1415(k)(4), (k)(5)(A); 34 C.F.R. § 300.523.

[33] 34 C.F.R. §§ 300.501(c)(1), 300.552.

[34] *Id.* § 300.501(c) (emphasis added).

11

This regulation requires school districts and other public agencies to involve parents in decisions regarding the educational placement of their child by following the procedures described in 34 C.F.R. § 300.345(a), which, in turn, requires that the parents of a child with a disability be "present at each IEP [individualized education program] meeting or are afforded the opportunity to participate."[35] The Hacklers also rely on IDEA regulation 34 C.F.R. § 300.552, which similarly requires public schools to ensure that parents be included in "a group" that determines "the educational placement of a child with a disability."[36]

Both federal regulations on which the Hacklers rely expressly govern *educational* placement decisions.[37] There is no language in either regulation, however, evidencing a congressional intent to include parents in *disciplinary* decisions involving children whose behavior is not a manifestation of a disability. Those decisions are specifically governed by 20 U.S.C.A. § 1415(k)(5)(A), which provides in pertinent part:

---

[35] ... *Id.* § 300.345(a).

[36] ... *Id.* § 300.552.

[37] ... *See id.* § 300.501(c) (requiring "that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child"), § 300.552 (requiring that parents be included in "a group" that determines "the educational placement of a child with a disability").

12

> If the result of the [manifestation determination] review described in paragraph (4) is a determination, consistent with paragraph (4)(C), that the behavior of the child with a disability was not a manifestation of the child's disability, *the relevant disciplinary procedures applicable to children without disabilities may be applied to the child in the same manner in which they would be applied to children without disabilities*, except as provided in section 1412(a)(1) of this title [requiring that each child with a disability receive a free appropriate public education].[38]

Under the express language of § 1415(k), when an ARD committee determines that the behavior of a child with a disability is not a manifestation of the disability, the child may be disciplined "in the same manner" as "children without disabilities."

The Hacklers conceded in the trial court that if the ARD committee determined that C.H.'s behavior was not a manifestation of his disability, "then consequences applicable to all students under the Dawson Student Code of Conduct would apply to [C.H.]." The Hacklers did not allege nor did they present any evidence showing that the disciplinary procedures applicable to

---

[38] 20 U.S.C.A. § 1415(k)(5)(A) (emphasis added); *see id.* § 1412(a)(1) (requiring that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school"); *Colvin ex rel. Colvin v. Lowndes County, Miss. Sch. Dist.*, 114 F. Supp. 2d 504, 509 (N.D. Miss. 1999) ("Congress expressed no intent, either expressly or impliedly, to shield special education students from the normal consequences of their misconduct if that misconduct has nothing to do with their disability.") (citing *Doe v. Bd. of Educ. of Oak Park & River Forest High Sch. Dist. 200*, 115 F.3d 1273, 1280 (7th Cir.), *cert. denied*, 522 U.S. 998 (1997)).

Dawson children without disabilities require parental involvement in the school's disciplinary decisions.[39]  Accordingly, we hold that there is no evidence that Hollingsworth and Anderson violated C.H.'s rights under the IDEA by placing him in the DAEP for forty-five days without referring the disciplinary decision to the ARD committee and, therefore, that Hollingsworth and Anderson are immune from individual liability to the Hacklers for civil damages under § 1983 as a matter of law.  Consequently, the trial court erred by denying appellants' motions for summary judgment as a matter of law.[40]

### III.  Conclusion

Because appellants are shielded against the Hacklers' claims based on the doctrine of qualified immunity as a matter of law, we reverse the trial court's denial of appellants' motions for summary judgment and render

---

[39] ... *See* 20 U.S.C.A. § 1415(k)(5)(A).

[40] ... *See Leachman*, 261 S.W.3d at 312–15 (affirming dismissal of § 1983 claims against public official based on qualified immunity when plaintiff failed to allege facts stating constitutional claims).

judgment that appellees take nothing on their IDEA claims brought under 42 U.S.C.A. § 1983.


JOHN CAYCE
CHIEF JUSTICE


PANEL:  CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

WALKER, J. concurs without opinion.

DELIVERED:  December 31, 2009