## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 23, 2012

No. 10-20589

Lyle W. Cayce
Clerk

MARY RUFFIN, L. F. By Next Friend,

Plaintiff-Appellant

v.

HOUSTON INDEPENDENT SCHOOL DISTRICT,

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CV-2415

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Mary Ruffin brought suit claiming that her child's school was not complying with the Individuals with Disabilities Education Act (IDEA). The district court denied all relief, and Ruffin appeals. We AFFIRM.

Ruffin's daughter, L.F., attends a school in the Houston Independent School District (HISD). In a hearing before a Texas Education Agency special education hearing officer, Ruffin alleged procedural and substantive violations of the IDEA. After an evidentiary hearing, the hearing officer concluded that

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-20589

HISD had complied with the IDEA.  No relief was granted.  On appeal of the hearing officer's decision, the district court granted summary judgment in favor of HISD. Ruffin then appealed to this court.

In December 2003, L.F. was determined to be disabled under the IDEA due to an emotional disturbance.  L.F. was placed in a behavioral services class (BSC) for 25 hours per week to help improve social skills with the ultimate goal of being placed back in a general education classroom.  L.F. remained in the BSC for the 2004-2005 and 2005-2006 school years.  The issues in the underlying case arise out of HISD's conduct during the 2006-2007 and 2007-2008 school years.

## DISCUSSION

Ruffin argues that HISD failed to comply with the substantive and procedural requirements of the IDEA.  We will first evaluate Ruffin's assertions of substantive defects and then turn to the alleged procedural inadequacies.

### I.     Substantive Requirements

A district court's determination of whether a student's Individual Education Plan (IEP) is appropriate is a mixed question of law and fact, which we review *de novo*.  *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997). Predicate findings, such as whether "a disabled student obtained educational benefits under an IEP, are subject to clear error review." *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1010 (5th Cir. 2010) (quotation marks and citation omitted).  The party challenging a school district's plan bears the burden of proving by a preponderance of the evidence that the school district has failed to comply with the IDEA.  *Id.* at 1010-11.

A child is entitled to receive a "free appropriate public education [FAPE] that emphasizes special education and related services designed to meet their

unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). Development of the IEP requires collaboration between parents and school districts. *R.H. v. Plano*, 607 F.3d at 1008. That collaboration takes place within an Admissions, Review, and Dismissal (ARD) Committee. *Id.*

Ruffin argues that HISD failed to develop and implement an appropriate IEP for the 2006-2007 and 2007-2008 school years. Ruffin alleges (a) that the school failed to undertake a Functional Behavior Assessment in formulating the 2006-2007 IEP, (b) that her daughter should have been given Extended School Year services in the summer of 2007, (c) that the IEP goals were improperly set, (d) that L.F.'s placement in BSC was unwarranted, (e) that the IEP was not adequately implemented beginning in January 2007, and (f) that L.F. did not make behavioral or academic progress.

An IEP is reasonably calculated to provide a meaningful educational benefit where "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated." *Michael F.*, 118 F.3d at 253.

We will address each of Ruffin's claims in the course of reviewing whether the IEP satisfies these four factors.

*1.     Individualized Program*

L.F.'s 2006-2007 IEP was developed in October 2006. Methods were identified to address certain behavioral problems exhibited by L.F. Ruffin alleges that the school failed to conduct a Functional Behavioral Assessment, but

No. 10-20589

the ARD Committee Report contains a supplement entitled Functional Behavior Assessment/Behavior Implementation Plan. It details two problematic behaviors exhibited by L.F. and the effectiveness of methods of intervention. As part of the supplement, the committee noted the situations in which these behaviors were exhibited, the consequences of the behaviors, and the most likely purpose or function of each behavior.

The 2006-2007 IEP contained accommodations to address L.F.'s specific behavioral problems. The program included a behavioral support plan and educational goals tailored to L.F.'s needs. The IEP included classroom modifications, placement in the BSC room, and counseling each week. These modifications were instituted based on information from Ruffin and school personnel. Based on a committee recommendation, L.F. was reevaluated. After the results of the reevaluation became available in January 2007, the IEP was adjusted to allow L.F. to complete assignments orally or to receive more time to finish them if her disability interfered with timely completion.

In February 2007, the committee considered the Extended School Year services for L.F. Such services are appropriate if the ARD committee has determined that a student is reasonably expected to exhibit "severe or substantial regression that cannot be recouped within a reasonable period of time." 19 Tex. Admin. Code § 89.1065. After consideration, the committee decided that the Extended School Year services were not necessary because regression had not been noted. Ruffin failed to demonstrate that L.F. was entitled to such services for the summer of 2007.

The 2007-2008 IEP was also individualized to meet L.F.'s particular needs. The ARD committee first met in May 2007 to discuss promotion to middle school

4

No. 10-20589

and to develop an IEP.  Because Ruffin disagreed with objectives related to the academic area of the plan, the committee developed a plan only for social skills. The ARD committee developed goals and objectives for L.F. in this area focusing on communicating with others and demonstrating self-control.  When the ARD committee reconvened in October 2007, the revised IEP provided classroom modifications including extended time, a peer tutor, and preferential seating. The IEP was also modified to increase counseling from 30 minutes each week to 60 minutes each week.

We conclude that the 2006-2007 and 2007-2008 IEPs were individualized on the basis of L.F.'s performance.

*2.     Least Restrictive Environment*

The IDEA requires students to be placed in the least restrictive environment.  *R.H. v. Plano*, 607 F.3d at 1008.  "To the maximum extent appropriate, children with disabilities" should not be removed from the regular education environment unless "education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily."  20 U.S.C. § 1412(a)(5)(A); *R.H. v. Plano*, 607 F.3d at 1008.

Ruffin alleges that L.F. was not allowed to be around children without disabilities.  The 2006-2007 IEP placed L.F. in a BSC class for 25 hours each week and in general education classes for 3.75 hours each week.  That schedule was because she required a small, well-structured class setting to continue to show progress.  The IEP reflects that the committee considered educational alternatives such as general education curriculum with supplementary aids and special education resource services.  The committee determined that education in the BSC room was appropriate.

No. 10-20589

The 2007-2008 IEP also reflects the consideration of alternative educational settings. L.F. was placed in the BSC room for 22.8 hours each week and participated in the general education environment for 7.6 hours each week. L.F. attended Physical Education/Health and study lab in general education. The IEP stated that special education self-contained services were necessary because L.F. needed a smaller class to provide individual assistance with social skills and remedial assistance. The IEP noted there were no potential harmful effects on the quality of service as provided through a behavioral services classroom.

In light of the record, we conclude L.F. was provided the least restrictive environment appropriate for her education.

*3.    Services provided with the involvement of key stakeholders*

Ruffin states that the school district failed to provide her with the documents necessary to make decisions and failed to implement the 2007-2008 IEP beginning in January 2007. The district court found that substantially all of the IEP provisions were implemented by the ARD committee and HISD. Testimony before the hearing officer indicates L.F.'s assignments were modified in a manner consistent with the IEP provisions. With respect to the 2006-2007 IEP, the special-education chair implemented the IEP provisions when L.F. refused to enter the assigned BSC room. There is no clear error in the findings.

The district court's finding that key stakeholders were involved in the development of the IEPs is supported by the record. In creating the 2006-2007 IEP, the meeting was attended by Ruffin, a special education teacher, a regular education teacher, the ARD chair and an assistant principal. A licensed school psychologist, a counselor, a general education teacher, and a special education

No. 10-20589

teacher all attended the February 2007 meeting to incorporate the recent evaluations into L.F.'s IEP. Ruffin was invited but did not attend.

For the October 2007 meeting, the ARD committee consisted of Ruffin, a counselor, a general education teacher, special education teachers, and an administrative representative.

The appropriate stakeholders were involved.

### 4.     *Positive academic and non-academic benefits*

Ruffin also argues that the IEP failed to provide positive academic benefits because the goals and objectives in the IEP dated February 2007 were not designed for improvement. Academic benefit should "be measured not by [a student's] relation to the rest of the class, but rather with respect to the individual student." *Hous. Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000). The "IDEA guarantees a basic floor of opportunity, specifically designed to meet the child's unique needs, supported by services that will permit him to benefit from the instruction." *Richardson Indep. Sch. Dist. v. Michael Z*, 580 F.3d 286, 292 (5th Cir. 2009) (quotation marks and citation omitted).

L.F. performed below her grade-level peers and required instruction at differing grade levels based on the subject matter. Although L.F. consistently performed at least one grade level below her peers, the IEP listed goals, specific objectives, and evaluation methods that required L.F. to improve. L.F.'s teachers testified at the administrative hearing that L.F. had shown improvement. The record indicates that L.F. passed each of her classes and was promoted to the next grade level. Further, the record indicates that L.F. achieved and even exceeded the ARD committee's expectations on the Texas State-Developed Alternative Assessment. L.F. exceeded expectations in Reading

No. 10-20589

and met the ARD committee's expectations in Math. The district court did not clearly err in determining that the IEP provided positive academic and non-academic benefits.

In sum, the IEP provided for L.F. was appropriate.

## II.     *Procedural Requirements under the IDEA*

Ruffin also argues that HISD failed to comply with the procedural requirements of the IDEA by failing to (1) give notice prior to the February 15, 2007, ARD committee meeting, (2) release test evaluations and behavior reports, (3) reschedule the May 24, 2007, committee meeting, and (4) provide an Independent Education Evaluation after one was requested. HISD argues that issues (2) through (4) were waived because they were not raised in the district court. Ruffin alluded to issues (2) and (4) in her complaint but did not provide any supporting argument. Ruffin fails to brief issue (3) before this court. Issues (2) through (4) are waived. Even if the arguments were not waived, Ruffin fails to show that the district court erred in granting summary judgment in favor of HISD.

The IDEA requires school districts to give written notice of ARD committee meetings within a reasonable time before the meeting, give parents an opportunity to examine records relating to the child, and provide an independent educational evaluation at the request of the parent. 20 U.S.C. § 1415(b)(1), (3). "[P]rocedural defects alone do not constitute a violation of the right to a FAPE unless they result in the loss of an educational opportunity . . . ." *Adam J. v. Kelley Ind. Sch. Dist.*, 328 F.3d 804, 812 (5th Cir. 2003) (quotation marks and citation omitted).

No. 10-20589

The district court found that Ruffin received proper notice prior to the February 15, 2007, ARD committee meeting. The district court found that HISD attempted to set a date for the ARD meeting on several occasions but ultimately was unable to obtain a response from Ruffin. The record supports the district court's finding. The district court also found that HISD attempted to reschedule the May 24, 2007, meeting through contact with Ruffin. The district court found that Ruffin did not respond to requests for dates on which the meeting could reconvene. There is nothing in the record to suggest otherwise.

Although the district court did not make findings on the remaining three issues, there is evidence in the administrative record that HISD did not commit procedural errors and the hearing officer so found. Ruffin largely fails to provide any argument in her brief to support her position on these issues. Ruffin argues that she did not receive requested test results prior to the February 15, 2007, ARD committee meeting. Testimony from the administrative hearing, however, states that the school made L.F.'s test scores available to Ruffin prior to the February 15, 2007, meeting but that Ruffin failed to pick up the documents. Ruffin fails to brief her contention that HISD withheld behavioral reports concerning her daughter. This court has no reason to reject the hearing officer's finding that behavioral reports were furnished to Ruffin no later than October 2007.

Finally, Ruffin has failed to demonstrate that HISD wrongfully withheld an Independent Education Evaluation after one was requested. The district court did not address this issue. A parent is entitled to such an evaluation "if the parent disagrees with an evaluation" obtained by the school. 34 C.F.R. § 300.502(b)(1). The IDEA defines an evaluation as a procedure used to

9

No. 10-20589

"determine whether a child has a disability and the nature and extent of the special education and related services that the child needs." *Id.* § 300.15.

Ruffin first requested an independent evaluation, stating she disagreed with the State-Developed Alternative Assessment-II and Stanford 10 results. These tests were not evaluations as defined in Section 300.15. They are more closely analogous to state and district-wide assessments as defined in 34 C.F.R. § 300.320(a)(6)(i). Ruffin was not entitled to the evaluation at this point. At the October 2007 meeting, Ruffin again requested an independent evaluation, this time stating she disagreed with emotional and cognitive testing. The requested evaluation for achievement, psychological, and intelligence testing was made.

Ruffin has not demonstrated that HISD failed to comply with the IDEA's procedural requirements.

The judgment of the district court is AFFIRMED.