**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2190
_____

COLONIAL SCHOOL DISTRICT

v.

G.K., by and through his Parents A.K. and S.K.; A.K.; S.K., Individually,
Appellants
_____

APPEAL FROM THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
D.C. No. 2:17-cv-3377
Magistrate Judge: Hon. Jacob P. Hart
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
January 18, 2019
_____

Before: GREENAWAY, JR., SHWARTZ, and PORTER, *Circuit Judges*.

(Filed February 13, 2019)

_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

PORTER, *Circuit Judge*.

G.K. and his parents ("Parents") initiated administrative proceedings against the Colonial School District ("Colonial"), alleging he was denied a free appropriate public education under the Individuals with Disabilities Education Act (IDEA). A hearing officer ruled for G.K. and Parents. Colonial brought suit under 20 U.S.C. § 1415(i)(2), and the District Court reversed.

The District Court properly concluded that G.K.'s individualized education program ("IEP") was not fatally flawed and that Parents were not denied their right to meaningful participation. We will affirm.

I

G.K. is a student at Colonial who requires special education due to autism and learning disabilities in reading comprehension, written expression, math problem-solving, and social language and social skills. Following G.K.'s fourth grade year (2015–16), Parents requested that he be held back rather than advance to fifth grade. Colonial denied this request, stating that G.K. showed excellent improvement academically and socially and that it would not be appropriate or beneficial for him to be older than his fourth grade classmates.

Colonial and Parents could not agree on the appropriate grade for G.K., so Parents filed a due process complaint. The parties entered into mediation, and Parents eventually agreed that G.K. would advance to fifth grade. In exchange, Colonial agreed to (1) hold an IEP meeting in September 2016 to discuss G.K.'s learning goals, (2) provide Parents

with standardized testing scores, and (3) pay for an Independent Educational Evaluation[1] for G.K.

Parents and Colonial met in September 2016 to discuss G.K.'s learning goals. At Parents' request, Colonial agreed to create objectives to address G.K.'s deficient areas. Colonial also agreed to assign daily homework based on the IEP, provide Parents with specific progress notes, and meet again in November 2016 to discuss G.K.'s progress.

After the September 2016 meeting, even though Colonial updated the IEP to reflect Parents' input, Parents filed a second due process complaint. Though the updated IEP added new annual goals, Parents thought it still failed to address the deficiencies identified in the end-of-school-year assessments. They requested that Colonial pay for a third party to develop new IEP goals.

After three hearing sessions in 2017 to evaluate the reasonableness of the September 2016 IEP, a hearing officer ruled for Parents, and Colonial appealed. The District Court reversed, concluding that the hearing officer improperly considered whether G.K. made sufficient progress under the IEP, exaggerated the importance of minor shortcomings in the IEP, and erroneously characterized Parents' alleged lack of subjective understanding as a denial of parent participation. Parents timely appealed.[2]

---

[1] This is an evaluation, at no cost to the parent, conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question. 34 C.F.R. § 300.502(a)(3)(i)–(ii).

[2] The District Court had jurisdiction under 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(a). The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). We have jurisdiction under 28 U.S.C. § 1291.

## II

The IDEA offers states federal funds to help educate children with disabilities. 20 U.S.C. § 1412(a); *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 993 (2017). States receiving these funds must provide special education in conformity with each child's IEP. 20 U.S.C. § 1401(9)(D). The team that prepares the IEP includes teachers, school officials, and the child's parents. *Id.* § 1414(d)(1)(B). Parents are entitled to participate in the IEP design under 20 U.S.C. § 1415 and 34 C.F.R. § 300.322.

If the parents and educators disagree over the IEP, the statute provides several methods for resolution. Initially, they can resolve their differences through a preliminary meeting or mediation. 20 U.S.C. § 1415(e), (f)(1)(B)(i). If the parties still cannot agree, the parents are entitled to a "due process hearing" before a state or local educational agency. *Id.* § 1415(f)(1)(A). The losing party may appeal to state or federal court. *Id.* § 1415(i)(2)(A).

## III

When a federal district court reviews state administrative proceedings, it "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* § 1415(i)(2)(C). "Due weight" and deference shall be given to the state administrative proceedings. *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 734 (3d Cir. 2009) (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). We have interpreted

"due weight" as a "modified *de novo*" review. *Id.* (citing *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 269–70 (3d Cir. 2003)). "Factual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why." *Id.* (citation and quotation marks omitted). This "due weight" obligation "prevent[s] the court from imposing its own view of preferable educational methods on the states." *Oberti v. Bd. of Educ.*, 995 F.2d 1204, 1219 (3d Cir. 1993). We exercise plenary review of the legal standard applied by the District Court. *S.H.*, 336 F.3d at 269.

IV

Here, Parents raise several overlapping points that may be distilled to two issues. First, did the District Court err by overturning the hearing officer's conclusion that the IEP was substantively flawed under the IDEA? Second, did the District Court err by holding that Parents were not denied meaningful participation under the IDEA? We address each issue in turn.

A

Parents argue that the District Court overemphasized the hearing officer's improper question about G.K.'s progress. We disagree. An IEP "is not guaranteed to produce any particular outcome." *Rowley*, 458 U.S. at 192 (citing S. Rep., No. 94-168, at 11 (1975)). Broadly speaking, "the intent of the [IDEA] was more to open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside." *Id.* So "the measure and adequacy of an IEP can only be determined as of the time it is offered to the student, and not at some later

5

date." *Fuhrmann ex rel. Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993).

The hearing officer relied on post-IEP performance to evaluate the IEP. Not only did the hearing officer expressly include G.K.'s progress in his statement of the issues, he also based his decision on his finding that G.K. "did not make progress . . . on certain goals" in the IEP. J.A. 38. Under the modified *de novo* standard, the District Court reasonably rejected the hearing officer's undue reliance on G.K.'s post-IEP performance. *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 530 (3d Cir. 1995), *amended* (Oct. 24, 1995) (holding that an IEP's "appropriateness is judged prospectively so that any lack of progress under a particular IEP . . . does not render the IEP inappropriate").

Parents next argue that G.K.'s IEP was substantively flawed because some of its goals were too subjective or imprecise to be fully measured, in violation of 20 U.S.C. § 1414, which requires each IEP to contain "a statement of *measurable* annual goals" (emphasis added).[3] The hearing officer determined that G.K.'s goals for speech and language were insufficiently objective because the accuracy of G.K.'s oral responses must be determined in part by a listener, whose evaluation is somewhat subjective.

The District Court concluded that any such imprecision in the IEP goals did not deny G.K. a free appropriate public education, and we agree. Colonial's hearing witness, Sheila Sives, testified that goals for social skills like speech are inherently more difficult

---

[3] The IDEA requires an IEP to include "a description of how the child's progress toward meeting the annual goals . . . will be measured[.]" *Id.* § 1414(d)(1)(A)(i)(III).

to quantify. Any oral dialogue necessarily involves some measure of subjectivity given the interplay and assessment that occurs between speakers and their audience. Notwithstanding such subtleties in all human interaction, G.K. was not deprived of a free appropriate public education.

The hearing officer also found that the IEP's reading goals were insufficiently precise because he was unclear whether those goals would be measured on a fifth grade or sixth grade baseline instruction level. But as the hearing officer acknowledged, Colonial informed Parents of G.K.'s baseline reading level during the year, and the IEP goals and reading level assessments adequately informed Parents of the areas in which he was being instructed and tested. To the extent that G.K.'s IEP could have more clearly conveyed how G.K.'s progress would be measured, the additional communication between Colonial and Parents cured this defect.

The District Court properly analyzed Parents' claims under the standard for procedural flaws. *Adam J. ex rel. Robert J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 811–12 (5th Cir. 2003) (holding that it is a procedural, not substantive, error for an IEP to lack measurable goals). Even if a goal leaves some room for subjectivity and cannot be measured with mathematical precision, the IDEA does not require perfection. *Endrew*, 137 S. Ct. at 999 ("Any review of an IEP must appreciate that the question is whether the IEP is *reasonable*, not whether the court regards it as ideal.") (citing *Rowley*, 458 U.S. at 206–07). A procedural flaw is not actionable so long as it does not affect the student's right to a free appropriate public education, significantly impede the parents' right to participation, or cause a deprivation of benefits. 20 U.S.C. § 1415(f)(3)(E)(ii); *Winkelman*

7

*ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 525–26 (2007). Here, the record supports the District Court's conclusion that the alleged procedural flaws do not meet that high standard.

B

Parents assert that they did not fully understand the IEP goals and argue that this procedural defect denied them the opportunity to participate in the decisonmaking process. The IDEA contains procedural safeguards "that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig v. Doe*, 484 U.S. 305, 311–12 (1988) (citing 20 U.S.C. § 1415(b)(1)). These procedural requirements are detailed in 34 C.F.R. § 300.322, which ensures that schools include parents in IEP meetings. Parents focus on subsection (e):

> *Use of interpreters or other action, as appropriate.* The public agency must take whatever action is necessary to ensure that the parent understands the proceedings of the IEP Team meeting, including arranging for an interpreter for parents with deafness or whose native language is other than English.

34 C.F.R. § 300.322(e). Specifically, Parents argue that because they could not subjectively "understand" every nuance of the subjects discussed in G.K.'s IEP meetings, they were denied meaningful participation. Appellants' Br. 18. The District Court correctly rejected this argument.

Applying *noscitur a sociis*,[4] the broad phrase "whatever action is necessary" should be interpreted by considering the more specific example that follows (i.e., provision of interpreters for deaf or non-English-speaking parents). Taken in context, Section 300.322(e) ensures that parents can attend and receive information about IEP meetings—with translation or similar assistance if necessary to accommodate families with English language or other communicative difficulties—so that they may understand what is happening in the meeting. These are procedural safeguards rather than a substantive guarantee that parents must fully comprehend and appreciate to their satisfaction all of the pedagogical purposes in the IEP.

Courts are reluctant to interpret the participation requirement too broadly. *See, e.g., Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 194 (2d Cir. 2005) (holding that parents were not denied meaningful participation in the IEP meetings even though the school failed to provide the parents with requested documents concerning the student's proposed classes). Section 300.322 entitles parents to meaningfully participate in the IEP meetings, not to dictate the outcome by professing "misunderstanding" of (read, disagreement with), Appellants' Br. 1, IEP goals that are reasonably clear.

We decline to deem "meaningful participation" to require perfect comprehension by parents of all aspects of a student's IEP. Indeed, Parents have cited no cases in support of such a requirement. By contrast, courts require "*serious*[] depriv[ation]" of parents'

---

[4] *Noscitur a sociis*, or "it is known by its associates," is a canon of construction holding that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it. *Noscitur a sociis*, Black's Law Dictionary (9th ed. 2009).

participation rights, *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 565 (3d Cir. 2010) (emphasis added) (citations omitted)—by, for example, the withholding of a student's evaluation records from her parents, *see Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist.*, 267 F.3d 877, 894 (9th Cir. 2001)—in order to find a violation of IDEA's procedural safeguards.

Here, Colonial facilitated Parents' participation at every stage of the IEP by listening to and attempting to address their concerns until Parents stopped communicating. The parties agreed to a facilitated IEP meeting in September 2016, and Colonial provided Parents with a Benchmark Assessment and an Independent Educational Evaluation so they would have more objective means to evaluate G.K.'s progress. Colonial also agreed to an emergency IEP meeting to address the allegedly deficient goals eight days after Parents requested it, but Parents refused to engage with Colonial on specific areas of disagreement. Even after Colonial's teachers determined that G.K.'s IEP addressed all identified needs, Colonial still offered to consider Parents' suggestions. Nothing in the record suggests that Colonial did not take seriously Parents' concerns. *See Winkelman*, 550 U.S. at 530 ("[Parents may] participate not only in implementation of IDEA's procedures but also in the substantive formulation of their child's education program. Among other things, IDEA requires the IEP Team, which includes the parents as members, to take into account any 'concerns' the parents have 'for

enhancing the education of their child' when it formulates the IEP." (quoting 20 U.S.C. § 1414(d)(3)(A)(iii))).[5]

V

The District Court correctly overturned the hearing officer's finding that G.K.'s IEP was fatally flawed under the IDEA. Parents' claim that the IEP's goals were immeasurable was not a substantive error nor a procedural error that violated G.K.'s right to a free appropriate public education. The District Court also rightly concluded that Parents' dissatisfaction with the IEP was not a denial of meaningful participation under IDEA. For these reasons, we will affirm the District Court's judgment.

---

[5] The District Court correctly rejected the hearing officer's unsupported finding that Parents were not involved in changes to the September 2016 and September 2017 IEPs. By indulging in such speculation, the hearing officer essentially switched the burden to Colonial to prove that it did not act wrongly. Because the District Court appropriately rejected this finding, it was also correct in rejecting the hearing officer's invocation of the IDEA stay put provision, 20 U.S.C. § 1415(j).